WILLIAM J. GHENT, ADMINISTRATOR, (ESTATE OF WILLIAM J. GHENT, JR.) *vs.* BURR E. STEVENS ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued January 7th—decided February 23d, 1932.

Michael J. Quinn and John V. O'Brien, with whom, on the brief, was Philip Troup, for the appellant (plaintiff).

James W. Carpenter, for the appellees (defendants).

AVERY, J. A verdict was returned by the jury, after the trial of this case, in favor of the defendants, and the plaintiff appealed, claiming that the court erred in refusing to set aside the verdict and in its instructions to the jury.

The plaintiff's decedent was riding, as a guest, in an automobile owned and operated by Thomas Hellyer in a southerly direction on the main highway from Hartford to Middletown. The Hellyer car ran into an automobile proceeding in the same direction, owned by the defendant Burr E. Stevens, and driven by his son, the defendant Edward B. Stevens. The roadway at this point is concrete pavement, twenty feet wide. On the east side is a trolley track, four feet from the edge of the cement; on the west side a shoulder from eight to ten feet in width. It was about five o'clock in the afternoon, June 14th, 1929. As the two automobiles were proceeding toward Middletown, the Stevens car approached a line of traffic proceeding in the same direction. At the head of this line was a team and following the team two automobiles, which

were caused to slow down by the team; and, as the Stevens car approached those ahead, the latter slowed down and the Stevens car was obliged to come to an abrupt stop. The Hellyer car, which was behind that of Stevens, crashed into the latter, and the plaintiff's decedent was thrown out, striking on the pavement, and received injuries from which he subsequently died.

It was the claim of the plaintiff that as the defendant's automobile approached the traffic ahead, it turned out to the left to pass those preceding, and when it had partially turned into the northbound lane of traffic, was compelled, by an automobile coming from the south in the opposite direction, to turn back into its previous position; and, the plaintiff claimed, the defendant turned back without warning and so suddenly that the driver of the Hellyer car was unable to stop, and crashed into the Stevens automobile, whereby the plaintiff's decedent was thrown out and killed.

On the other hand, the defendant claimed that as he approached the traffic ahead, he signaled with his hand and gradually slowed down; that when a short distance to the rear of the car preceding him, that car suddenly stopped and he thereupon stopped; and that the Hellyer car crashed into him. The defendant driver denies that he was attempting to pass the traffic ahead to the left, his claim being that the accident was wholly caused by the negligence of Hellyer in failing to have his car under control and in crashing into the defendant's car when there was abundant opportunity to pass it to the right on the shoulder of the road.

Inasmuch as there is abundant evidence to substantiate the defendant's claim as to the cause of the accident, the court did not err in refusing to set aside the verdict. Indeed, from our examination of the evidence, it would appear that the jury might reasonably have concluded that the sole cause of the accident was

the negligence of the operator of the car in which the plaintiff's decedent was riding. It was broad daylight on a clear day. The road was straight and the driver of the Hellyer car, following that of the defendant, had a full view of the defendant's car and of the traffic ahead, and had abundant opportunity either to have stopped his car if under reasonable control or to have turned out to the right and avoided the accident. Moreover, the physical facts were not such as to preclude the jury from accepting the evidence of the defendant as to the way in which the accident happened.

In instructing the jury, the court at one point, through obvious inadvertence, referred to "negligence" as "an intentional failure to perform a legal duty." This is assigned as error by the plaintiff, but an examination of the charge in its entirety, on the meaning of negligence, makes it clear that the jury could not have been misled by this single inaccuracy of statement. *Smart* v. *Bissonette,* 106 Conn. 447, 453, 138 Atl. 365; *Gans* v. *Olchin & Co., Inc.,* 109 Conn. 164, 169, 145 Atl. 751; *Sortito* v. *Prudential Ins. Co.,* 108 Conn. 163, 170, 142 Atl. 808; *De Lucia* v. *Polio,* 107 Conn. 437, 438, 140 Atl. 733.

In discussing proximate cause, the court stated that the phrase "substantial factor" has some resemblance to the phrase "reasonable doubt" as used in criminal cases, in that the two words themselves perhaps give as clear an idea of what they mean as all the discussion which is indulged in with reference to them. This could not have given the jury to understand, as the appellant claims, that the plaintiff must establish his case, in order to succeed, by proof beyond a reasonable doubt. Fairly construed, the reference is susceptible of no other meaning than that the term "substantial factor" is so clear as to need no expository

definition. Evidently the court had in mind what we said in *Pilon* v. *Alderman,* 112 Conn. 300, 301, 152 Atl. 157: "It is doubtful if the expression is susceptible of a definition more understandable than the simple and familiar words it employs."

Error is assigned in that the court stated that in judging the conduct of the defendant, the jury should try to place themselves, as far as possible, in his situation as the evidence showed it existed, and ask: "What would an ordinarily prudent man, and I assume that you are all such, do under the circumstances, if you were sitting behind the wheel of a car at the time and place where this accident occurred?" The court fully informed the jury that, in determining whether or not the defendant was negligent, they should test his conduct by that of an ordinarily prudent man under the same circumstances, and the assumption that the jurymen were all ordinarily prudent men could not have misled them as to the standard of care required of the defendant.

In giving illustrations of the application of the rules of law to the differing situations as claimed by the parties, the court referred to the version of the defendant Edward B. Stevens, that he saw the traffic situation develop while some distance away, that he began to slow down before he reached the car and the baker wagon, and then came to a sudden stop behind the Buick car after signaling with his hand, and the court said: "Now, if you find that to have been the situation, you would, of course, find that there was no negligence on the part of Mr. Stevens." The appellant claims that thereby the court, in effect, informed the jury that the driver of the Stevens car would not be negligent, even though he did not signal before slowing down his car. We do not think that the jury could have so understood. It appears from the record

that Stevens claimed that, before he commenced to slow down, he gave a signal and just before he reached the car ahead of him, it stopped suddenly and he stopped. It is quite evident that when the court used the phrase "after signaling with his hand" it meant that the signal with his hand was given before the car commenced to slow down as was the claim of the defendant on the evidence. In fact, the court had previously read to the jury General Statutes, § 1644, which requires every driver of a vehicle, before slackening its speed, to indicate by signal his intention so to do.

"The charge ought not to contain contradictory statements of the law or statements which might be so construed; neither ought the charge to be required to be, or expected to be, as accurate in its instruction upon legal propositions as the opinions of a court of last resort. . . . We examine the charge to see if it fairly presents the case to the jury, in such way that injustice was not done under the rules of law and the legal rights of either litigant, and not with a legal microscope, to search for technical flaws, inexact, inadvertent or contradictory statements." *Pratt, Read & Co.* v. *New York N. H. & H. R. Co.,* 102 Conn. 735, 740, 130 Atl. 102. We do not find prejudicial error in any of those parts of the charge as to which error is assigned.

There is no error.

In this opinion the other judges concurred.