KAREN BARKSDALE *v.* TERESA HARRIS ET AL.
(11001)

DUPONT, C. J., HEIMAN and SCHALLER, Js.

Argued December 8, 1992—decision released March 30, 1993

*David N. Rosen,* for the appellant (plaintiff).

*Dion W. Moore,* for the appellees (defendant Connecticut National Bank et al.).

DUPONT, C. J. The plaintiff appeals from a judgment rendered after a jury verdict in favor of the defendants Connecticut National Bank and Lend Lease Cars, Inc., in an action for personal injuries resulting from an automobile accident. The defendant Teresa Harris was operating a van while in the course of her employment with the defendant Connecticut National Bank. The defendant Lend Lease Cars, Inc., owned the van.[1] A jury returned a verdict for the defendants and the plaintiff filed a "motion to set aside the verdict, in arrest of judgment or for a new trial," which was denied. The issues raised on appeal are whether the trial court (1) misled the jury, in its charge on proximate cause, by using the phrase "the proximate cause" instead of "a proximate cause," and (2) improperly refused to instruct the jurors that they could draw an adverse inference from the failure of the defendants to call a physician who had examined the plaintiff on behalf of the defendants.[2] Another issue, namely, whether a plaintiff should be allowed to call as a witness a medical doctor hired by the defendant to examine the plaintiff, must also be resolved because it is collaterally involved in the second issue raised by the plaintiff.

The jury reasonably could have found the following facts. On December 14, 1987, the plaintiff was stopped at a red light when her vehicle was hit from behind by

---

[1] We refer herein to Connecticut National Bank and Lend Lease Cars, Inc., as the defendants. The plaintiff withdrew her claim against Teresa Harris before trial.

[2] A subsidiary question, namely, whether the plaintiff should have been allowed to comment during the plaintiff's closing argument to the jury on the defendants' failure to call as a witness the same physician, need not be resolved because of our resolution of the adverse inference claim of the plaintiff.

one operated by Harris. That evening, the plaintiff went to a hospital emergency room complaining of pain between her shoulders, which worsened over the next year. The plaintiff was diagnosed as having a disc herniation, which she claimed was caused by the Harris accident. Shortly before the trial began, the plaintiff was involved in another automobile accident and filed an action for damages from injuries arising from that accident. The second lawsuit was withdrawn during the trial of this action. Interrogatories were submitted to the jury in the present action, and the jury found that the defendant Harris was negligent but that her negligence did not proximately cause the plaintiff's injuries.

The plaintiff claims that the trial court's repeated use of the words "the proximate cause," instead of "a proximate cause" in its supplemental charge misled the jury. "Our standard of review concerning claims of instructional error is well settled. [J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . ." (Internal quotation marks omitted.) *Sullivan* v. *Norwalk,* 28 Conn App. 449, 456, 612 A.2d 114 (1992), quoting *Hall* v. *Burns,* 213 Conn. 446, 475, 559 A.2d 10 (1990). "A court's instructions must be adapted to the issues and not mislead the jury but reasonably guide it in reaching a verdict." *Sullivan* v. *Norwalk,* supra. In a personal injury action based on negligence, in order to render a defendant liable, the defendant's negligence need not be the sole proximate cause of an injury. *Albert* v. *Lee Circle, Inc.,* 162 Conn. 124, 128, 291 A.2d 735 (1971).

The second interrogatory submitted to the jury read: "Was the negligence of defendant Connecticut National Bank's employee Teresa Harris a proximate cause of the plaintiff's injuries?" In a supplemental charge to

the jury, the trial court misread the interrogatory as reading "the proximate cause" instead of "a proximate cause." With rare exception, the trial court referred to "the proximate cause" throughout the charge and the supplemental charge. When we view the jury instructions as a whole, this difference signifies more than a mere technicality because it recurs so frequently. The difference could have had a deleterious effect on the jurors' ability to reach a proper verdict. The jurors could have been misled into thinking that the defendants' negligence had to be the sole proximate cause of the plaintiff's injuries in order to find the defendants liable. We, therefore, conclude that a new trial is required.

Although the disposition of the first issue requires a new trial, we address the plaintiff's second issue because it is likely to recur on retrial. This issue is whether the trial court should instruct jurors that they could draw an adverse inference from the defendants' failure to call as a witness a physician who had examined the plaintiff on behalf of the defendants.

Additional facts are necessary for resolution of this issue. The plaintiff's treating physician testified that the collision involved in this appeal caused the plaintiff's disc herniation, while the defendants' medical witness, a neurologist, who did not examine the plaintiff, testified that it did not. Another physician, orthopedic surgeon Eric Garver, was also retained by the defendants as an expert. He examined the plaintiff on the second day of the trial, but did not testify.

Neither medical witness for the defense was disclosed as an expert. After the plaintiff was examined by Garver, she requested a written copy of Garver's report pursuant to Practice Book § 229.[3] The defendants orally

---

[3] Practice Book § 229 provides in relevant part: "If requested by a party against whom an order is made under this rule, or who voluntarily agreed

conveyed to the plaintiff the information contained in Garver's report but did not provide a written report until after the trial was over. Garver's report substantiated the plaintiff's claim that her injuries were proximately caused by the collision with the defendants' van. Garver concluded that the plaintiff had a 20 percent disability, 17 percent of which was a result of the collision with the defendants' van.

When it became apparent that the defendants were not going to call Garver as a witness, the plaintiff indicated that she would call Garver. The defendants objected, claiming that Garver's testimony would be inadmissible because Garver was retained as an expert by the defendants. The trial court responded that the only way the plaintiff would be prevented from calling Garver as a witness would be if Garver's testimony could be construed as the work product of the defendants' counsel. A robust discussion among the plaintiff, the defendants and the trial court ensued. Before the trial court made a ruling, however, the plaintiff stated that if the court was going to rule that the plaintiff could not call Garver as a witness, then the plaintiff would not take an exception to that ruling as long as she could get a *Secondino*[4] instruction on the basis of the defendants' failure to call Garver. The court then stated, "All right, then that's the way I will rule. You gave me an easy way out."

This colloquy equates to a ruling by the court that the plaintiff could not call Garver as the plaintiff's witness. Because of this ruling, which the plaintiff accepted as correct,[5] the plaintiff did not take exception to it,

to an examination, the party causing the examination to be made shall deliver to him a copy of the written report of the examining physician setting out his findings . . . diagnoses and conclusions. . . ."

[4] *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 674–76, 165 A.2d 598 (1960).

[5] The words of the plaintiff's request to charge indicate that the plaintiff believed that she could not use Garver as a witness. The plaintiff's request

but instead relied on her belief that a *Secondino* charge would be proper. These two issues, namely, whether the plaintiff, as a matter of law, should have been allowed, on the facts of this case, to call Garver as a witness and whether a *Secondino* charge should have been given are inextricably intertwined. If the plaintiff had been given the right to call Garver as her witness, there would be no *Secondino* issue to address.

We must, therefore, first ascertain whether a court may properly preclude a plaintiff from calling as a witness a physician retained by a defendant to examine her before deciding whether a *Secondino* instruction was warranted on the facts of this case.

The defendants argued strenuously that the plaintiff could not call Garver as her witness because Garver's testimony would be the work product of the defendants' counsel. We could not find, and the parties do not cite, any Connecticut case that answers this question.[6]

The work product doctrine protects an attorney's "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs and countless other tangible and intangible [items]." *Hickman*

---

to charge was the following: "In this case the plaintiff submitted herself to a medical examination by Dr. Garver on behalf of the defendants. Under our rules the plaintiff may not call Dr. Garver as a witness, but Dr. Garver was available to the defendants, who chose not to call him. The law is that when it would be natural under the circumstances for a party to offer a specific witness and the party fails to do so, you may draw the inference that the evidence of the witness would be unfavorable to the party's cause. Whether or not you do draw such an inference is in your discretion as the factfinders in this case. *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 674–76 [165 A.2d 598] (1960); *Pederson* v. *Vahidy*, 209 Conn. 510, 524 [552 A.2d 419] (1989)."

[6] This case does not involve the unanswered, but collateral, question of *Farrell* v. *St. Vincent's Hospital*, 203 Conn. 554, 525 A.2d 954 (1987), namely, whether a plaintiff should be allowed to call as a witness a medical doctor who was hired by the defendant to examine medical records and assist in the defense, rather than to examine a plaintiff physically.

v. *Taylor,* 329 U.S. 495, 511, 67 S. Ct. 385, 91 L. Ed. 451 (1945). To be protected under this doctrine, the work of the attorney must be such that it forms an essential step in the procurement of data and must involve duties normally performed by attorneys. *Stanley Works* v. *New Britain Redevelopment Agency,* 155 Conn. 86, 95, 230 A.2d 9 (1967).

The doctrine does not protect the "work product" of a physician. *Gordon* v. *Pennsylvania R. Co.,* 5 F.R.D. 510 (E.D. Pa. 1946); *Nielsen* v. *Brown,* 232 Or. 426, 433, 374 P.2d 896 (1962). Once a physician examines a plaintiff, the physician then possesses firsthand knowledge as to the extent and nature of the plaintiff's injuries, and can be called upon by either party to testify as to that knowledge. *Kissel* v. *Nelson Packing Co.,* 87 Mich. App. 1, 4, 273 N.W.2d 102 (1979); *Nielsen* v. *Brown,* supra, 436–45. "A physician who has examined the plaintiff at the request of the defendant, and formulated his findings and conveyed the findings to the parties, should not be barred from relating the substance of his report when called as a witness by the plaintiff." *Bevilacqua* v. *Gilbert,* 143 App. Div. 2d 213, 214, 532 N.Y.S.2d 15 (1988); see *Gilly* v. *City of New York,* 69 N.Y.2d 509, 508 N.E.2d 901, 516 N.Y.S.2d 166 (1987); *Nielsen* v. *Brown,* supra. If a defendant is allowed to use information learned from the examination of a plaintiff if it is favorable, but suppress the same information if it is unfavorable, then this would result in "unfairness against the plaintiff without whose submission to a physical examination the evidence could not have been obtained." *Nielsen* v. *Brown,* supra, 444.

In the present case, the plaintiff voluntarily submitted to examination by Garver at the request of the defendants. Promptly after the examination, Garver made a written report as to his findings and conclusions as to the cause of the plaintiff's injuries. The information was orally conveyed to the plaintiff during trial,

but the written report was not delivered to the plaintiff until after the trial was over. The written report should have been promptly disclosed to the plaintiff pursuant to our rules of practice.[7] See Practice Book § 229. Once the plaintiff was examined by Garver, Garver possessed firsthand knowledge about the nature and extent of the plaintiff's injuries. That knowledge was not the product of the defendants' attorney's work, nor did it involve data procured by the attorney, nor did it involve duties normally performed by attorneys. See *Stanley Works* v. *New Britain Redevelopment Agency,* supra. The knowledge of Garver, therefore, was available for use by either the plaintiff or the defendants. The plaintiff should have been allowed, therefore, to call Garver as a witness.

Because the trial court did not allow the plaintiff to call Garver as her witness, we will address whether a *Secondino* instruction should have been given in these circumstances. At the conclusion of the defendants' case, the plaintiff requested that the court give the jury a *Secondino* instruction. The trial court refused. The plaintiff claims that the court's refusal to give a *Secondino* instruction was improper because the witness was available and was a witness that the defendants would naturally produce. We agree.

In order for the trial court to give an instruction that the jury could draw an adverse inference from the failure of a party to call a witness, two requirements must be met: (1) the witness must be available; and (2) the witness must be one whom the party would naturally produce. *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960). The plaintiff claims that the first requirement was met because the defendants

---

[7] The plaintiff did not seek any sanctions for the failure of the defendants to provide her with a written report. See Practice Book § 231.

conceded this issue at trial. The defendants maintain that the plaintiff did not prove the availability of Garver.

A review of the record discloses that the defendants did indeed concede the availability of Garver. At trial, the plaintiff raised the fact that she needed to prove availability. The defendants' counsel responded that "I will concede, because I believe it to be the fact, that Dr. Garver is now back from wherever he was and is generally available. So he is, to the best of my knowledge, available. And I would concede that." Therefore, the first requirement had been met.

The defendants also claim that Garver was not a witness that they would naturally have produced. "A witness who would naturally be produced by a party is one who is known to that party and who, by reason of his relationship to that party or to the issues, or both, could reasonably be expected to have peculiar or superior information material to the case which, if favorable, the party would produce." *State* v. *McNellis,* 15 Conn. App. 416, 424, 546 A.2d 292 (1988), quoting *Secondino* v. *New Haven Gas Co.,* supra. A physician who examines a plaintiff for the purpose of testifying at trial is a witness whom the examining party naturally would have produced. *Raia* v. *Topehius,* 165 Conn. 231, 237, 332 A.2d 93 (1973).

In the present case, the defendants retained two physicians as experts, Robert Russo and Garver. Garver examined the defendant, while Russo did not. The plaintiff testified, without objection, on direct examination that she had been examined by Garver at the request of the defendants. The defendants called Russo, but not Garver, to testify as to the cause of the plaintiff's injuries.

A party is not required to call as a witness every expert retained. Here, however, Garver actually exam-

ined the plaintiff while Russo did not, and it is, therefore, reasonable to expect that Garver possessed medical information, material to the case, that was superior to Russo's. Applying the ruling of *Raia* v. *Topehius,* supra, we conclude that Garver was a witness the defendants naturally would have produced. Although in *Raia,* the physician who examined the plaintiff was retained by the plaintiff, that fact should not affect its holding. The case is equally applicable to situations where a physician examines a plaintiff at the request of the defendants.

The interrogatories reveal that the jury found that the defendant Harris was negligent, but did not find that she proximately caused the plaintiff's injuries. The substance of Garver's findings from the examination of the plaintiff went straight to the issue of proximate cause because he concluded that the plaintiff had a 20 percent disability, 17 percent of which was caused by the collision with the defendants' vehicle. Without reference to the failure of the defendants to call Garver, whose testimony would have substantiated the plaintiff's claim, the jury was deprived of information that was extremely material to the issue of proximate cause.

The defendants contend that because Garver was equally available to both parties, he would not be someone whom the defendants would naturally produce. Although "each party ordinarily is empowered to place an available witness on the stand, such a witness often may be expected to furnish testimony more favorable to one side than the other." *State* v. *Ruiz,* 202 Conn. 316, 325, 521 A.2d 1025 (1987). Because Garver was the defendants' expert, it is reasonable to conclude that the defendants would have called him to testify about his findings from his examination of the plaintiff had Garver's testimony been more favorable to the defendants than to the plaintiff. See *State* v. *Grant,* 221 Conn. 93, 107, 602 A.2d 581 (1992). We conclude that Garver

was a witness whom the defendants would naturally have produced had his testimony been favorable. A *Secondino* instruction, therefore, should have been given to the jury.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.